LUBIN & ENOCH, P.C.
Nicholas J. Enoch
State Bar No. 016473
Clara S. Bustamante
State Bar No. 036044
Margot Veranes
State Bar No. 037194
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
Email: nick@lubinandenoch.com
        clara@lubinandenoch.com
        margot@lubinandenoch.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose del Carmen Camacho Jimenez, a single man, and a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Underground Supply West, LLC, an Arizona limited liability company; Underground Supply West II, LLC, an Arizona limited liability company; and James G. Regan and Carrie S. Regan, husband and wife;<br><br>Defendants. | No. 2:24-cv-00906-SMB<br><br>**HYBRID FLSA RULE 16(b) COLLECTIVE / RULE 23 STATE LAW CLASS ACTIONS**<br><br>**SECOND AMENDED COMPLAINT** |

Plaintiff, Jose del Carmen Camacho Jimenez ("Plaintiff" or "Camacho Jimenez"), by and through his attorneys at Lubin & Enoch, P.C., brings this action individually and on behalf of all other current and former hourly employees (the "Putative Class Members") who worked for Underground Supply West, LLC ("Underground Supply I"), Underground Supply West II, LLC ("Underground Supply II"), and James G. Regan

("Regan"), at any time during the relevant statutes of limitation through the final disposition of this matter, to recover compensation, liquidated damages, and attorneys' fees pursuant to the overtime provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"). He also brings this action individually and on behalf of the Putative Class Members (1) to recover unpaid minimum wage earnings pursuant to the Arizona Minimum Wage Act, A.R.S. §§ 23-362–365 (the "AMWA") and (2) to recover owed paid sick time pursuant to the Fair Wages and Healthy Families Act, A.R.S. § 23-371, *et seq.* ("the Act").

Plaintiff's FLSA claims are asserted as a collective action pursuant to section 16(b) of the FLSA while his claims under the AMWA and Act are asserted as class actions pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule 23"). Plaintiff also asserts separate and independent causes of action for retaliation under the FLSA and AMWA.

## I.   OVERVIEW

1.   Generally, this is a collective action to recover overtime wages and liquidated damages pursuant to the FLSA, to recover owed minimum wages and additional damages as a class action pursuant to the AMWA and to recover owed paid sick time and additional damages as a class action pursuant to the Act.

2.   Plaintiff and the Putative Class Members are similarly situated persons who have worked for Defendants as hourly workers at any time during the relevant statutes of limitation through the final disposition of this matter and have not been compensated minimum wage, overtime hours worked, or provided paid sick time, in violation of federal and state laws.

3.      Specifically, Defendants have an illegal company-wide policy which has caused Plaintiff and the Putative Class Members to work hours for which they were not compensated at the applicable overtime rate each workweek.

4.      Additionally, Defendants have an illegal company-wide policy to compensate Plaintiff and the Putative Class Members by the number of polyvinyl chloride ("PVC") elbows, fittings, couplings, and accessories they made, not hours worked, causing them to earn less than the mandated minimum wage required by the AMWA.

5.      Defendants also have an illegal company-wide policy to deny Plaintiff and the Putative Class Members paid sick time as required by the Act.

6.      Although Plaintiff and the Putative Class Members have routinely worked in excess of forty (40) hours per workweek, Plaintiff and the Putative Class Members have not been paid overtime of at least one and one-half times their regular rates for all hours worked in excess of forty (40) hours per workweek.

7.      Defendants have knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members for all hours worked each workweek at the proper amount of minimum wage and overtime rate on a routine and regular basis during the relevant time periods.

8.      Additionally, Defendants failed to maintain and provide payroll record showing the hours worked for each day worked by Plaintiff and Putative Class Members or the amount of paid sick time available to them.

9.      Plaintiff and the Putative Class Members did not (and currently do not) perform work that meets the definition of exempt work under the FLSA.

10.     AMWA determines the status of employees according to the standards of the FLSA, and as such, Defendants are likewise not exempt from paying Plaintiff and the Putative Class Members minimum wage as required by A.R.S. § 23-362(D).

11.     Plaintiff and the Putative Class Members seek to recover overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b); to recover all wages owed, including interest thereon, an additional amount equal to twice the underpaid wages pursuant to the AMWA as a class action pursuant to Rule 23; and to recover all paid sick time owed, including interest thereon, an additional amount equal to twice the paid sick time owed pursuant to the Act as a class action pursuant to Rule 23.

12.     Plaintiff prays that all similarly situated workers (Putative Collective Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit. Plaintiff's consent form is attached hereto as **Exhibit A**.

13.     Plaintiff also prays that the Rule 23 class is certified as defined herein, and that Plaintiff designated herein be named as Class Representative with respect to the Defendants' violations of the AMWA and the Act.

14.     Plaintiff also brings an individual and separate claim for retaliation under the FLSA.

15.     Specifically, after making complaints about being undercompensated and discrepancies in Defendants' pay practices, Plaintiff was terminated by Defendants in retaliation for exercising his rights under the FLSA.

## II.    PARTIES

16.    During all relevant time periods, Camacho Jimenez has resided in Maricopa County, Arizona.

17.    Camacho Jimenez was an "employee" of Defendants as that term is defined in 29 U.S.C. § 203(e)(1) and A.R.S. §§ 23-362(A) and 23-371(F).

18.    Plaintiff did not receive the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek as required by the FLSA, did not receive the correct amount of minimum wage for all hours worked as required by the AMWA, and did not receive paid sick time as owed under the Act. Additionally, Defendants did not maintain payroll records showing hours he worked each day and his earned paid sick time as required by the Act and AMWA.

19.    Upon information and belief, Underground Supply I is an Arizona Limited Liability Company, domiciled in Arizona and headquartered at 102 E. Victory Street, Phoenix, Arizona 85040.

20.    At all relevant times, Underground Supply I has been an original equipment manufacturer of schedule 40/80 PVC elbows, fittings, couplings, and accessories.

21.    Upon information and belief, Underground Supply I's annual dollar volume of business done is not less than $500,000.

22.    Underground Supply I is an "employer" as that term is defined in 29 U.S.C. § 203(d), and A.R.S. §§ 23-362(B) and 23-371(G).

23.    Underground Supply I is one of two entities responsible for hiring, firing, and supervising Plaintiff and the Putative Class Members and controlling their work

schedules and conditions of employment, determining the rate and method of payment, and maintaining any employment records that exist.

24. Upon information and belief, Underground Supply II purchased Underground Supply I sometime in 2022 or 2023.

25. Upon information and belief, Underground Supply II is an Arizona Limited Liability Company, domiciled in Arizona and its statutory agent is located at 1640 S. Stapley Drive, Suite 132, Mesa, Arizona 85204.

26. Upon information and belief, as part of its purchase of Underground Supply I, Underground Supply II has acquired all or most of Underground Supply I's equipment, employees, property, and clients.

27. At all relevant times, Underground Supply II has been an original equipment manufacturer of schedule 40/80 PVC elbows, fittings, couplings, and accessories.

28. Upon information and belief, Underground Supply II's annual dollar volume of business done is not less than $500,000.

29. Underground Supply II is an "employer" as that term is defined in 29 U.S.C. § 203(d), and A.R.S. §§ 23-362(B) and 23-371(G).

30. Underground Supply II is one of two entities responsible for hiring, firing, and supervising Plaintiff and the Putative Class Members and controlling their work schedules and conditions of employment, determining the rate and method of payment, and maintaining any employment records that exist.

31.     Upon information and belief, Regan and Carrie S. Regan (collectively, the "Regans") are residents of Maricopa County, Arizona and have been at all times relevant to this proceeding.

32.     The Regans are now, and at all times relevant hereto have been, husband and wife, constituting a marital community under the laws of the State of Arizona. The acts engaged in, and the omissions made by the Regans were performed as agents and for the benefit of the marital community.

33.     In performing his work on behalf of Underground Supply I, Regan acted in the interest of his marital community.

34.     Regan is an "employer" as that term is defined in 29 U.S.C. § 203(d) and A.R.S. §§ 23-362(B) and 23-371(G).

35.     The Regans previously owned Underground Supply I, but, upon information and belief, sold it to Underground Supply II sometime in 2022 or 2023.

36.     However, prior to and after the sale, Regan has been a manager and supervisor of all employees, including Plaintiff and the Putative Class Members.

37.     Defendants employ more than fifteen (15) employees within the meaning of A.R.S. § 23-372(B) and, therefore, Plaintiff and the Putative Class Members should have accrued one hour of paid sick time for every thirty (30) hours worked.

38.     While employed by Defendants, Camacho Jimenez was "engaged in commerce" as defined in the FLSA and corresponding regulations. 29 U.S.C. § 203(b); *see also* 29 C.F.R. § 776.9 ("[i]t is clear that the employees covered by the wage and hour

1  provisions of the Act as employees 'engaged in commerce' are employees doing work

2  involving or related to the movement of persons or things.").

3      39.    Regan was the supervisor of Camacho Jimenez and the Putative Class

4  Members. At all times relevant hereto, Regan exercised managerial responsibilities and

5  substantial control over the terms and conditions of Camacho Jimenez's and the Putative

6  Class Members' work. Among other things, Regan is primarily responsible for hiring and

7  firing employees, controlling employees' conditions of employment, determining the rate

8  and method of payment, and maintaining any employment records that may exist.

9      40.    Regan engaged in the conduct listed in ¶¶ 36 and 39 with respect to Plaintiff

10  and the Putative Class Members in furtherance of interests of Underground Supply I and

11  II.

12  **III.    JURISDICTION AND VENUE**

13      41.    This Court has jurisdiction over the subject matter of this complaint pursuant

14  to 29 U.S.C. § 216(b), Ariz. Const. art. VI § 14, and A.R.S. §§ 12-123 and 23-364.

15      42.    This Court has personal jurisdiction over Defendants because the cause of

16  action arose within Maricopa County as a result of Defendants' conduct within this

17  District and all named Defendants reside or conduct substantive business therein.

18      43.    Venue is proper in this Court pursuant to A.R.S. § 12-401 because this is

19  where a substantial part of the events or omissions giving rise to the claims occurred and

20  because, upon information and belief, Defendants reside and are headquartered in this

21  county.

22  ///

8

## IV.    GENERAL ALLEGATIONS

44.    Plaintiff's and the Putative Class Members' job duties consist of manual labor in relation to the molding, forming, and packaging of PVC elbows, fittings, couplings, and accessories.

45.    Plaintiff specifically received the unloaded and unpacked PVC. He would dip the material into boiling oil in order to mold the PVC. After this, he would place the material in cool water. He would also cut and shape the PVC using other tools and blades.

46.    With the exception of gloves to protect him when working with the hot oil, Plaintiff was not provided personal protective equipment and he would frequently injure himself when molding and cutting the PVC.

47.    On one occasion, Plaintiff blistered the entirety of the palm of his hand when he struck a PVC coupling. Defendants were aware of this and told him to continue working or he would be terminated.

48.    Defendants did not provide adequate ventilation or space while Plaintiff and the Putative Class Members worked, leading them to inhale in close proximity the smoke that was produced from the hot oil. Plaintiff and the Putative Class Members frequently became ill from inhaling the smoke.

49.    Plaintiff and Putative Class Members frequently worked up to ten (10) hours a day with the hot oil itself.

50.    Plaintiff and the Putative Class Members were expected to work while ill, including with the fever, flu, or cold.

51.    If Plaintiff and the Putative Class Members stayed home due to an illness or

injury, they were not provided paid sick time.

52.    Plaintiff had been employed by Defendants since approximately 2019 and was terminated on January 31, 2024.

53.    Plaintiff and the Putative Class Members are non-exempt employees.

54.    Plaintiff and the Putative Class Members typically work approximately fifty-five (55) to sixty (60) hours per week.

55.    Defendants paid Plaintiff and the Putative Class Members with checks that did not record their hours worked or accrued paid sick time.

56.    Plaintiff and the Putative Class Members punched in and out to record hours worked.

57.    Prior to July 2023, Plaintiff and the Putative Class Members were paid on an hourly basis. However, as of roughly July 2023, Defendants began to pay them by the number of PVC elbows, fittings, couplings, and accessories they made, not hours worked.

58.    Plaintiff personally made roughly eight hundred (800) to one thousand (1,000) PVC pieces a day.

59.    As of late 2023, Regan began to inform Plaintiff and Putative Class Members that if they did not like how they were paid, they should just leave.

60.    Camacho Jimenez complained to his coworkers about their pay structure and that it was wrong how Defendants paid them. Shortly after this, Regan told Camacho Jimenez to leave the premises within ten (10) minutes because his contract had expired. Camacho Jimenez had never signed or received a contract.

61.   Plaintiff and the Putative Class Members were never issued any tax documents, including a 1099 or W-2.

62.   Because Defendants did not pay Plaintiff and the Putative Class Members for all hours worked in excess of forty (40) hours at time-and-a half, Defendants' pay policies and practices violate the FLSA.

63.   Because Defendants' pay practices to Plaintiff and the Putative Class Members did not meet the required minimum wage rate required by Arizona law and they failed to report their hours worked, Defendants' pay policies and practices violate the AMWA.

64.   Because Defendants did not compensate Plaintiff and the Putative Class Members for paid sick time or report their accrued paid sick time, Defendants' pay policies and practices interfered with and restrained their right to accrue and use paid sick time for all hours worked in violation of A.R.S. § 23-372(A).

65.   Because Defendants did not maintain or provide payroll records showing the hours worked for each day worked by Plaintiff and the Putative Class Members or the amount of paid sick time available, Defendants' pay policies and practices violated the recordkeeping requirements of A.R.S. §§ 23-364(D) and 375(C).

66.   Because Defendants terminated Plaintiff for complaining about his pay structure, Defendants violated the anti-retaliation provisions contained in 29 U.S.C. § 215(a)(3) and A.R.S. § 23-364(B).

///

11

## V.    CAUSES OF ACTION
## COUNT ONE
### (Collective Action Alleging FLSA Violations)

**A.    FAILURE TO PAY OVERTIME UNDER THE FLSA**

67.    Plaintiff incorporates by reference all paragraphs and allegations set forth in the statement of facts of this Complaint as though fully and completely set forth herein.

68.    The FLSA Collective is defined as:

**ALL CURRENT AND FORMER HOURLY, NON-EXEMPT LABORERS WHO ARE OR WERE EMPLOYED BY UNDERGROUND SUPPLY WEST, LLC OR UNDERGROUND SUPPLY WEST II, LLC AT ANY TIME FROM MARCH 7, 2021, THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("FLSA COLLECTIVE" OR "FLSA COLLECTIVE MEMBERS")**

69.    At all times hereinafter mentioned, Defendants have been an employer within the meaning of 29 U.S.C. § 203(d).

70.    At all times hereinafter mentioned, Underground West I and II have been an enterprise within the meaning of 29 U.S.C. § 203(r).

71.    At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1), that has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, or in any closely related process or occupation directly essential to the production thereof, and their enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

72.     During the respective periods of Plaintiff's and the FLSA Collective Members' employment by Defendants, these individuals have provided services for Defendants that involved interstate commerce for purposes of the FLSA.

73.     In performing the operations hereinabove described, Plaintiff and the FLSA Collective Members have been engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(b), (i), (j) & 207(a).

74.     At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

75.     The proposed class of similarly situated employees sought to be certified pursuant to 29 U.S.C. § 216(b) is defined in Paragraph 68.

76.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendants.

77.     Defendants have violated 29 U.S.C. §§ 207 and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all of the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

78.    Moreover, Defendants knowingly, willfully, and with reckless disregard carried out their illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation. 29 U.S.C. § 255(a).

79.    Defendants are sophisticated parties and employers, and therefore knew (or should have known) their pay policies were in violation of the FLSA.

80.    Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Defendants to pay them according to the law.

81.    The decisions and practices by Defendants to not pay the proper amount of overtime for all hours worked were neither reasonable nor in good faith.

82.    Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

**B.    COLLECTIVE ACTION ALLEGATIONS**

83.    All previous paragraphs are incorporated as though fully set forth herein.

84.    Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all of Defendants' employees who have been similarly situated to Plaintiff with regard to the work they performed and the manner in which they have not been paid.

85.    Other similarly situated employees of Defendants have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

86.    The FLSA Collective Members are defined in Paragraph 68.

87.    Defendants' failure to pay Plaintiff and the FLSA Collective Members for overtime hours at the rates required by the FLSA results from generally applicable policies and practices by Defendants and does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

88.    Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

89.    All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, or rates of pay—are entitled to be paid at the proper overtime rate for all hours worked in excess of forty (40) hours per workweek.

90.    Although the issues of damages may be individual in character, there is no detraction from the common nucleus of facts that would otherwise render Plaintiff and the FLSA Collective Members not similarly situated.

91.    Absent a collective action, many members of the proposed FLSA Collective likely will not obtain redress of their injuries and Defendants will retain the proceeds of their rampant violations while enjoying a competitive edge against other employers who pay their employees according to the law.

92.    Moreover, Defendants' threats to engage in illegal retaliatory conduct against those who complain about their pay policies will only serve to further discourage and intimidate the proposed FLSA Collective Members from seeking redress of their injuries.

93.     Individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide judicial consistency.

94.     Accordingly, the FLSA collective of similarly situated persons should be certified as defined in Paragraph 68 and notice should be promptly sent.

## COUNT TWO
### (Class Action Alleging Violations of the AMWA)

**A.     VIOLATIONS OF THE AMWA**

95.     Plaintiff incorporates by reference all paragraphs and allegations set forth in the statement of facts of this Complaint as though fully and completely set forth herein.

96.     The Class is defined as:

> **ALL CURRENT AND FORMER HOURLY LABORERS WHO ARE OR WERE EMPLOYED BY UNDERGROUND SUPPLY WEST, LLC OR UNDERGROUNDS SUPPLY WEST II, LLC AT ANY TIME FROM JULY 1, 2023, THROUGH THE FINAL DISPOSITION OF THIS MATTER (the "AMWA Putative Class Members").**

97.     At all times relevant to the Complaint, Defendants have been an employer within the meaning of A.R.S. § 23-362(B).

98.     At all times hereinafter mentioned, Plaintiff and the AMWA Putative Class Members have been employees within the meaning of A.R.S § 23-362(A).

99.     Plaintiff was employed by Defendants during the relevant time period, and was a covered employee entitled to the protections of A.R.S. § 23-363, which requires that covered employees be compensated 13.85/hour in 2023 and $14.35/hour in 2024.

16

100. Defendants have willfully failed to pay Plaintiff the full balance of wages owed, in violation of A.R.S. § 23-363.

101. As of July 1, 2023, Defendants had an illegal companywide policy to compensate Plaintiff and the AMWA Putative Class Members by the number of PVC elbows, fittings, couplings, and accessories they made, not hours worked, causing them to earn less than the mandated minimum wage required by the AMWA.

102. Plaintiff and the AMWA Putative Class Members are entitled to recover the balance of the wages owed, including interest thereon, and an additional amount equal to twice the underpaid wages pursuant to A.R.S § 23-364(G).

103. Plaintiff and the AMWA Putative Class Members have suffered damages and continue to suffer damages as a result of Defendants' illegal pay practices.

104. Defendants are in possession and control of the necessary documents and information from which Plaintiff and the AMWA Putative Class Members would be able to precisely calculate damages.

105. Plaintiff, on behalf of himself and the AMWA Putative Class Members, seeks to recover the balance of the wages owed, including interest thereon, an additional amount equal to twice the underpaid wages, and attorneys' fees and costs.

106. In violating the AMWA, Defendants acted willfully, without a good faith basis, and with reckless disregard of applicable Arizona law, and hence, a three-year statute of limitations applies to the commencement of this action. A.R.S. § 23-364(H). Moreover, as Defendants' violations were part of a continuing course of employer conduct, this action encompasses all violations. *Id.*

107. The proposed class of employees, *i.e.* AMWA Putative Class Members, sought to be certified pursuant to federal law, is defined in Paragraph 96.

**B.    CLASS ALLEGATIONS**

108. Plaintiff brings his claims as a class action pursuant to Rule 23 on behalf of the AMWA Putative Class Members employed by Defendants to work in Arizona since July 1, 2023.

109. Class action treatment of Plaintiff's and the AMWA Putative Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

110. Upon information and belief, there are approximately more than forty (40) members of the AMWA Putative Class; accordingly, the number of AMWA Putative Class Members is so numerous that joinder of all AMWA Putative Class Members is impracticable.

111. Plaintiff is a member of the AMWA Putative Class, and his claims are typical of the claims of other AMWA Putative Class Members; Plaintiff has no interests that are antagonistic to or in conflict with the interests of other AMWA Putative Class Members.

112. Plaintiff and his counsel will fairly and adequately represent the AMWA Putative Class Members and their interests.

113. Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class

members and because a class action is superior to other available methods for the fair and

efficient adjudication of this litigation.

114.    Although the issue of damages may be individual in character, there is no

detraction from the common nucleus of facts that would otherwise predominate over

individual issues of law or fact common to Plaintiff and the AMWA Putative Class

Members.

115.    Accordingly, the Class should be certified as defined in Paragraph 96.

## COUNT THREE
### (Class Action Alleging Violations of the Act)

**A.    VIOLATIONS OF THE ACT**

116.    Plaintiff incorporates by reference all paragraphs and allegations set forth in

the statement of facts of this Complaint as though fully and completely set forth herein.

117.    The Class is defined as:

**ALL CURRENT AND FORMER HOURLY LABORERS WHO ARE OR WERE EMPLOYED BY UNDERGROUND SUPPLY WEST, LLC OR UNDERGROUND SUPPLY WEST II, LLC AT ANY TIME FROM JULY 1, 2017, THROUGH THE FINAL DISPOSITION OF THIS MATTER (the "PST Putative Class Members").**

118.    At all times relevant to the Complaint, Defendants have been an employer

within the meaning of A.R.S. §§ 23-362(B) and 371(G).

119.    At all times hereinafter mentioned, Plaintiff and the PST Putative Class

Members have been employees within the meaning of A.R.S §§ 23-362(A) and 371(F).

120.    Plaintiff was employed by Defendants during the relevant time period, and

was a covered employee entitled to the protections of A.R.S. § 23-372(B) which requires

1   that employees shall accrue at least one (1) hour of earned paid sick time for every thirty

2   (30) hours worked.

3    121. Defendants have willfully restrained and interfered with Plaintiff and the

4   PST Putative Class Members' rights in violation of A.R.S. § 23-374(A).

5    122. Defendants had an illegal companywide policy to interfere with Plaintiff and

6   the PST Putative Class Members' right to use their accrued paid sick time by both refusing

7   to allow them to not work when injured or ill, and not paying them any paid sick time.

8    123. Plaintiff and the PST Putative Class Members are entitled to recover the

9   balance of the earned paid sick time owed, including interest thereon, and an additional

10   amount equal to twice that amount owed pursuant to A.R.S § 23-364(G).

11    124. Plaintiff and the PST Putative Class Members seek to recover the balance

12   of the earned paid sick time owed to them as a result of Defendants' company-wide policy

13   of not paying them or reporting accrued paid sick time.

14    125. Plaintiff and the PST Putative Class Members have suffered damages and

15   continue to suffer damages as a result of Defendants' illegal pay practices.

16    126. Defendants are in possession and control of the necessary documents and

17   information from which Plaintiff and the PST Putative Class Members would be able to

18   precisely calculate damages.

19    127. Plaintiff, on behalf of himself and the PST Putative Class Members, seeks

20   to recover the balance of the earned paid sick time owed, interest, liquidated damages in

21   the amount of twice the balance owed, attorneys' fees, and costs.

22

128.    In violating the Act, Defendants acted willfully, without a good faith basis, and with reckless disregard of applicable Arizona law, and hence, a three-year statute of limitations applies to the commencement of this action. A.R.S. § 23-364(H). Moreover, as Defendants' violations were part of a continuing course of employer conduct, this action encompasses all violations. *Id.*

129.    The proposed class of employees, *i.e.* PST Putative Class Members, sought to be certified pursuant to federal law, is defined in Paragraph 117.

## B.    CLASS ALLEGATIONS

130.    Plaintiff brings his claims as a class action pursuant to Rule 23 on behalf of the PST Putative Class Members employed by Defendants to work in Arizona since July 1, 2017.

131.    Class action treatment of Plaintiff's and the PST Putative Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

132.    Upon information and belief, there are approximately more than forty (40) members of the PST Putative Class; accordingly, the number of PST Putative Class Members is so numerous that joinder of all PST Putative Class Members is impracticable.

133.    Plaintiff is a member of the PST Putative Class, and his claims are typical of the claims of other PST Putative Class Members; Plaintiff has no interests that are antagonistic to or in conflict with the interests of other PST Putative Class Members.

134.    Plaintiff and his counsel will fairly and adequately represent the PST Putative Class Members and their interests.

135.    Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

136.    Although the issue of damages may be individual in character, there is no detraction from the common nucleus of facts that would otherwise predominate over individual issues of law or fact common to Plaintiff and the PST Putative Class Members.

137.    Accordingly, the Class should be certified as defined in Paragraph 117.

### COUNT FOUR
#### (Individual Action Alleging Violation of the FLSA)

138.    Plaintiff incorporates by reference all paragraphs and allegations set forth in the statement of facts of this Complaint as though fully and completely set forth herein.

139.    Defendants have retaliated against Plaintiff for enforcing his rights under 29 U.S.C. § 215(a)(3).

140.    Defendants were aware that Plaintiff was not being paid overtime or accrued paid sick time. As alleged in Paragraphs 59–60, Camacho Jimenez was fired for complaining about how Defendants were compensating him and others.

141.    Defendants' conduct toward Plaintiff as set forth *supra* was egregious, malicious, and done with an evil intent to punish him for asserting his rights under the FLSA. As such, Plaintiff is entitled to an award of punitive damages. *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 25 F. Supp. 2d 1053, 1059 (N.D. Cal. 1998) (citing 29 U.S.C. § 216(b)) (finding the Ninth Circuit's historically broad view of permissible

remedies under federal labor law and the plain language and policy of § 216(b) indicated that punitive damages were permissible for retaliation claims under the FLSA); *Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 111 (7th Cir. 1990), cert. denied, 502 U.S. 812 (1991) (finding the FLSA's provision of legal or equitable relief as needed to effectuate anti-retaliation included punitive damages); *see also Lambert v. Ackerly*, 180 F.3d 997, 1011 (9th Cir. 1998) (referencing *Travis*, 921 F.2d at 111) (the "Seventh Circuit's reasoning is persuasive" in its affirmation that punitive damages are available for FLSA retaliation claims).

142.    As a result of Defendants' retaliation, Plaintiff is entitled to a payment of wages lost, recovery of an additional, equal amount of liquidated damages, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT FIVE
### (Individual Action Alleging Violation of the AMWA)

143.    Plaintiff incorporates by reference all paragraphs and allegations set forth in the statement of facts of this Complaint as though fully and completely set forth herein.

144.    A.R.S. § 23-364(B) provides no employer shall discriminate or subject any person to retaliation for asserting any claim or right under this article, for assisting any other person in doing so, or for informing any person about their rights. Taking adverse action against a person within ninety days of a person's engaging in the foregoing activities shall raise a presumption that such action was retaliation, which may be rebutted by clear and convincing evidence that such action was taken for other permissible reasons.

145.    Defendants have retaliated against Plaintiff for enforcing his rights under A.R.S § 23-364(B).

146.    As alleged in Paragraphs 59–60, Camacho Jimenez was fired for complaining about how Defendants were compensating him and others.

147.    As a result of Defendants' retaliation, Camacho Jimenez is entitled to an amount set by the Court sufficient to compensate him and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued or until legal judgment is final. A.R.S. 23-364(G). Such recovery includes payment of wages lost, recovery of an additional amount equal to twice the underpaid wages, punitive damages, and reasonable attorneys' fees and cost and disbursements of this action. *Id.*

## C.    RELIEF SOUGHT

Plaintiff respectfully prays for judgment against Defendants as follows:

a.    For an Order certifying the FLSA Collective as defined in Paragraph 68 and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative FLSA Collective Members;

b.    For an Order approving the form and content of a notice to be sent to all putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.    For an Order pursuant to section 16(b) of the FLSA finding Defendants liable for unpaid overtime wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), civil penalties, and for

24

1          liquidated damages equal in amount to the unpaid compensation found due

2          to Plaintiff (and those FLSA Collective Members who have joined in the

3          suit);

4    d.    For an Order certifying the Class as defined in Paragraphs 96 and 117, and

5          designating Plaintiff as the Class Representative of the AMWA and PST

6          Putative Class Members;

7    e.    For an Order pursuant to Arizona law awarding Plaintiff and the AMWA

8          Putative Class Members the balance of the underpaid wages, interest

9          thereon, an additional amount equal to twice the amount owed, and other

10         damages allowed by law;

11    f.    For an Order pursuant to Arizona law awarding Plaintiff and the PST

12         Putative Class Members the balance of unpaid sick time owed, interest

13         thereon, an additional amount equal to twice the amount owed, and other

14         damages allowed by law;

15    g.    For an Order awarding the costs and expenses of this action;

16    h.    For an Order awarding attorneys' fees;

17    i.    For an Order awarding pre-judgment and post-judgment interest at the

18         highest rates allowed by law;

19    j.    For an Order awarding Plaintiff service awards as permitted by law;

20    k.    For an Order compelling the accounting of the books and records of

21         Underground Supply I and II, at Defendants' expense;

22

l.      A declaratory judgement pursuant to the Uniform Declaratory Judgments Act, A.R.S. § 12-1381, *et seq*., that Defendants have violated Plaintiff and Putative Class and/or Collective Members' rights, privileges, protections, compensation, benefits, and entitlements under the law, as alleged herein;

m.      In the event that Defendants fail to timely satisfy any judgement for Plaintiff or the AMWA Putative Class, PST Putative Class, and/or Collective Members, an amount which is treble the amount of the outstanding judgement, with interest thereon, in accordance with A.R.S § 23-360;

n.      For retaliation against Plaintiff as set forth in Count Four, wages lost, recovery of an additional, equal amount of liquidated damages, punitive damages, and reasonable attorneys' fees and cost and disbursements of this action pursuant to 29 U.S.C. § 216(b);

o.      For retaliation against Plaintiff as set forth in Count Five, an amount set by the Court sufficient to compensate him and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued or until legal judgment is final, payment of wages lost, recovery of an additional amount equal to twice the underpaid wages, punitive damages, reasonable attorneys' fees and cost and disbursements of this action; and

p.      For an Order granting such other and further relief as may be necessary and appropriate.

RESPECTUFLLY SUBMITTED this 18th day of July,2024.

LUBIN & ENOCH, P.C.


/s/ *Clara S. Bustamante*
Clara S. Bustamante
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July 2024, I electronically filed and transmitted the attached Second Amended Complaint to the Clerk's Office using the ECF System for filing.  A copy has been sent to the following:

Robert Weeks, Esq.
Scott Zwillinger, Esq.
Samantha Lee, Esq.
Jennifer Allen, Esq.
2020 North Central Avenue, Ste. 675
Phoenix, Arizona 85004
Email: Robert.weeks@zwfirm.com
        scott.zwillinger@zwfirm.com
        Samantha.lee@zwfirm.com
        Jennifer.allen@zwfirm.com
 *Attorneys for Defendants*



/s/ Cristina Gallardo-Sanidad

27